GEORGE W. PARKER v. G. W. VANDERBILT.

(Filed 22 May, 1912.)

**Master and Servant — Safe Appliances — Negligence — Evidence— Nonsuit.**

　　Upon evidence tending to show that the master failed to furnish a safe appliance, in general use, to his servant, in this case a shield to protect his servant from flying wood which the servant was directed to cut for fire purposes at a swing cut-off saw, and that this device would have avoided an injury to the servant caused by a piece of wood from the stick he was sawing flying up and striking him, a judgment of nonsuit should not be allowed.

APPEAL from *Lane, J.,* at July Term, 1911, of BUNCOMBE.

This is an action to recover damages for personal injury caused, as the plaintiff alleges, by the negligence of the defendants.

The plaintiff was in the employment of the defendant Vanderbilt at the time of his injury, and was engaged in operating a swing cut-off saw, and was injured by a piece of wood, which he alleges he was sawing, being thrown against his face. The negligence alleged was a failure to provide a shield or guard for the saw.

The plaintiff testified, among other things, that he had been in the employment of the defendant in his wood-yard about three years, and that before he was injured he had used the cut-off saw to some extent, but not much, and that he was directed to use it at the time of his injury, and he gave the following description of the saw, of the circumstances connected with his injury, and of the general use of a shield or guard:

PARKER *v.* VANDERBILT.

Q. Tell about this machinery, this cut-off saw; describe it to the jury the best you can, so that they will know what it is. A. This swing cut-off saw is hung up, and it balances on a counter-shaft, and the saw swings back and forth, so you can catch hold of it and pull it and turn it loose when you cut the stick of wood off and it swings out. You put your wood on the table and you catch your saw with your right hand and you grab the wood with your left hand, if you are a mind to; if not, you pull it up with your right hand, and cut the wood into stove-wood and fire-wood lengths.

Q. You say this saw would swing out again? A. Yes.

Q. In order to cut the wood you pulled it through it? A. Yes.

Q. What is the size of that saw? A. Twenty-four inches.

Q. By what power was that saw run? Electric motor; current from the Weaver plant.

Q. At what speed would it revolve? A. About thirty-five hundred.

Q. State whether it revolved fast or slow. A. Very fast.

Q. State to his Honor and the jury about your injury there. A. I was cutting cordwood; was ordered by Mr. Forestburg to go and cut a cord of pine wood, and I went into the mill, and there was no one there to help me. Mr. Benken had got hurt, got his finger cut, and Mr. Forestburg asked me to go to Biltmore and see if I could get a man to help me cord wood that morning, and I went over there and found Mr. Green, and I asked him if he wanted to go to work, and he said he did, and I went over to the mill with him, and I went to the office and told Mr. Forestburg that I had found a man, and I went to the mill and started it to running and got hurt. The block hit me in the face, and that was about all I knew until I found myself out in the field, and I went to the office and tried to telephone for the doctor, and I was bleeding so I could not telephone for the doctor, and I went over to the drug store and asked Mr. Grove to give me something to keep me from getting sick, and I went over to the hospital and one of the nurses telephoned for Dr. Glenn, and that was all I remembered until I woke up in bed.

Q. Just before you received that blow, what did you do? A. I had pulled up this stick of wood and cut off one block and I went to cut off another, and when I got it in about this position (indicating with arms), it struck me in the face.

Q. State what kind of a block it was. A. I cannot say; I did not see it.

Q. State whether it was from the wood you were sawing. A. It must have come from the wood I was sawing.

Q. State whether it came from the wood you were sawing. A. I do not know.

Q. What threw it in your face? A. The saw.

Q. You said you heard the ring of the saw? A. Yes.

Q. State whether this swing cut-off saw had any guard on it or not. A. It did not. It had no protection that I know of.

Q. Have you seen swing cut-off saws at other places, and are you familiar with them? A. Yes.

Q. How many and what number? A. I have seen about four.

Q. Then describe fully to his Honor and the jury just what a guard on a swing cut-off saw is, what its use, what it does, etc. A. A swing cut-off saw, all the others that I saw, had the guard; there is a short mandel that comes together at the lower part of it, and right at the side of this mandel is a shield on all I ever saw except this one.

Q. What is the use of this shield? A. To keep the blocks from coming back over the saw.

Q. How does that keep the blocks from coming up? A. It catches them from behind and keeps them from coming up.

Q. You say that you know of five or six saws that ran here? A. Yes.

Q. And you say that all had the guards? A. Yes, all except one.

Q. And you saw them where else? A. I worked in the car shops at Wilmington; I was in the car department, and those saws all had the shields; there were four of them.

Q. Did you operate those saws yourself? A. No, sir.

Q. Where else did you see those saws? A. At Rocky Mount and at Wilmington; was after I got hurt.

Q. You did not operate them? A. No, sir.

Q. Did you see them anywhere else? A. I saw them at Waycross, Ga.

Q. Did you operate those at Waycross? A. No, sir.

Q. State what they had. A. They had guards.

J. J. Harris, a witness for the plaintiff, among other things, testified as follows:

Q. Did you ever work for the Biltmore estate in reference to this lumber yard and wood shop they were speaking of? A. Yes.

Q. About when? A. My recollection is that I went there about 1901, as well as I remember now—no, it was later than that; I worked there four years, and my recollection is that I left there in 1907.

Q. What were your duties, what position did you hold? A. I was foreman of the plant.

Q. What did the machinery consist of; was that swing cut-off saw part of it? A. Yes.

Q. What was its condition with reference to this guard? A. It did not have any.

Q. How long have you been engaged in business of that character? A. Regularly for the last eight years.

Q. What is your knowledge and experience with saws of this character; what is your knowledge and experience, if any, with these swing cut-offs? A. I have seen them in operation, several of them just like this one. I have one like it in the plant I operate now.

Q. State whether saws of this kind are common in plants of this character. A. Yes, they are common.

Q. With or without guards? A. With guards.

Q. What is the object of that guard? A. If his body was very near the saw, and if anybody should fall against that saw, the shield would protect him, and they would not be apt to be cut unless they got their hand under the machine, and that shield would keep the saw from throwing pieces of timber up or in some other direction.

Q. What do you mean by "throwing them in some other direction"? A. Unless it was a very small piece of a block, it

would not have room to come up between the saw and the shield and it would go behind.

At the conclusion of the evidence his Honor entered judgment of nonsuit, on motion of the defendant, and the plaintiff excepted and appealed.

*H. C. Chedester for plaintiff.*
*J. H. Merrimon and J. G. Merrimon for defendant.*

ALLEN, J., after stating the case: Applying the principle, frequently announced, that the evidence must be considered in the light most favorable to the plaintiff on a motion for judgment of nonsuit, we are of opinion there was error in allowing the motion as to the defendant Vanderbilt.

There was evidence tending to prove that the plaintiff was in the employment of the defendant, and was operating a swing cut-off saw; that while operating said saw a piece of wood he was sawing was thrown against him by the saw and injured him; that the saw had no shield or guard; that a shield or guard would have prevented the wood from striking him; that shields or guards were in general use on machines used for similar purposes.

If so, the case is controlled by *Pritchett v. R. R.,* 157 N. C., 88, and *Rogers v. Manufacturing Co.,* 157 N. C., 484.

The facts in the last case referred to are very much like those in this case, and the principles of law are the same.

We find no evidence tending to prove liability on the part of the defendant Schenck, and as to him, the judgment of nonsuit is affirmed.

A new trial is ordered as to the defendant Vanderbilt.

New trial.